1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRENDA MARCH, EDGAR MARCH,

                        Plaintiffs,

        v.

ETHICON, INC.,

                        Defendant.

CASE NO. C20-5032 BHS

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANT'S SUPPLEMENTAL
MOTION FOR SUMMARY
JUDGMENT

This matter comes before the Court on Defendant Ethicon, Inc.'s ("Ethicon")

supplemental motion for summary judgment. Dkt. 76. The Court has considered the

pleadings filed in support of and in opposition to the motion and the remainder of the file

and hereby grants in part and denies in part the motion for the reasons stated herein.

## I.   PROCEDURAL HISTORY

On September 12, 2013, Plaintiffs Brenda and Edgar March ("Plaintiffs") filed

suit against Ethicon in the MDL *In re Ethicon, Inc. Products Liability Litigation*, MDL

No. 2327, located in the Southern District of West Virginia. Dkt. 1. On October 16, 2018,

Ethicon filed a motion for partial summary judgment. Dkts. 42, 43. On October 25, 2018,

Plaintiffs responded. Dkt. 45. On October 31, 2018, Ethicon replied. Dkt. 46. The

ORDER - 1

1   Southern District of West Virginia did not resolve the motion prior to transfer. *See* Dkt.

2   78 at 3 n.1.

3       On January 14, 2020, the case was transferred to this Court from the Southern

4   District of West Virginia. Dkt. 55. On June 25, 2020, Ethicon moved for leave to file

5   supplemental summary judgment briefing. Dkt. 69. On July 24, 2020, the Court granted

6   Ethicon's motion. Dkt. 75.

7       On August 6, 2020, Ethicon filed a supplemental motion for summary judgment.

8   Dkt. 76. On August 24, 2020, Plaintiffs responded. Dkt. 78. On August 28, Ethicon

9   replied. Dkt. 80.

10              ## II.   FACTUAL BACKGROUND

11      Plaintiffs Brenda March ("Mrs. March") and her husband Edgar March ("Mr.

12  March") bring claims against Ethicon arising out of Mrs. March's surgical implantation

13  of TVT-O—a prolene mesh implant—to treat her stress urinary incontinence ("SUI").

14  Dkt. 1; Dkt. 77-2, Plaintiff Fact Sheet ("PFS"), at 6. In 2008, Mrs. March reported

15  experiencing urine leakage with most activities and was diagnosed with SUI and a Grade

16  1-2 cystocele. Dkt. 42-2. Dr. John Farrer performed surgery on Mrs. March to implant the

17  TVT-O device on March 20, 2008 in Olympia, Washington. PFS at 6.

18      Mrs. March alleges that she has experienced sustained pelvic pain, painful

19  intercourse, and a myriad of other, painful complications because of her 2008 TVT-O

20  implant surgery. Dkt. 79-1, Deposition of Brenda March (B. March Depo.), at 2–4. In

21  sum, Mrs. March states that the TVT-O implant "has ruined my life[.]" *Id.* at 2. In the

22  PFS, Mrs. March was asked when she first experienced symptoms of the bodily injuries

she claims are a result of the TVT-O; Mrs. March responded: "Immediately. This was confirmed after two – three weeks of non-healing and the enduring constant pain. I was referred for an MRI." PFS at 8. The PFS also asked when she first attributed the bodily injuries to the TVT-O, to which Mrs. March responded "Immediately." *Id.* When questioned about the timing of her symptoms and the attribution to the TVT-O in her deposition, Mrs. March stated that she immediately had problems, but she did not immediately know that her injuries were from the pelvic mesh. B. March Depo. at 7. She testified that she "did not know for sure it was from the mesh until they removed it" and that she "was wondering why [she] had this, if it was from the mesh or what it was from." *Id.*

Following her TVT-O implant, Mrs. March was referred to Dr. Ross Vogelgesang for inner thigh pain, right groin pain, and later right hip pain. Dkt. 77-3. On May 2, 2008, Dr. Vogelgesang noted that Mrs. March's TVT-O "seems to aggravate her right hip pain and medial thigh pain," but also noted that the TVT-O "did relieve her stress incontinence and urgency." *Id.* at 2. In a follow up appointment on January 12, 2009, Mrs. March reported increasing pain with strenuous activity, particularly during sexual relations with her husband. Dkt. 77-3 at 2. Dr. Vogelgesang noted that Mrs. March's urologist was concerned that her mesh implant "may actually be eroding into her bladder" and recommended that Mrs. March "follow up with one of urologists regarding possible erosion[.]" *Id.* Mrs. March again saw Dr. Vogelgesang on March 13, 2009 and described her pain levels between a one and five out of ten. Dkt. 77-5 at 2. Dr. Vogelgesang noted that Mrs. March would have a follow up appointment with her

urologist in May. *Id.* However, Mrs. March states that the earliest she met with a urologist was 2015 when she saw Dr. George McClure. B. March Depo. at 9–10.

On November 18, 2015, Mrs. March underwent revision of her TVT-O by Dr. McClure in Tacoma, Washington to remove the TVT-O band and to improve her urinary symptoms. Dkt. 42-5 at 2–4. Dr. McClure subsequently implanted a TVT Exact on April 13, 2016 to treat Mrs. March's SUI. *Id.* at 5–7.

## III.  DISCUSSION

Ethicon moves for summary judgment on Plaintiffs' negligence-based claims and breach of warranty claims, arguing that the claims are preempted by the Washington Products Liability Act ("WPLA"). Ethicon also moves for summary judgment on Plaintiffs' product liability claims and loss of consortium claim, arguing that the claims are time-barred. In the alternative, Ethicon argues that this Court should dismiss Plaintiffs' failure to warn claims because there is insufficient evidence to establish a prima facie case.

**A.  Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole,

1    could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

2    *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

3    present specific, significant probative evidence, not simply "some metaphysical doubt").

4    Conversely, a genuine dispute over a material fact exists if there is sufficient evidence

5    supporting the claimed factual dispute, requiring a judge or jury to resolve the differing

6    versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W.*

7    *Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

8            The determination of the existence of a material fact is often a close question. The

9    Court must consider the substantive evidentiary burden that the nonmoving party must

10   meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

11   U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual

12   issues of controversy in favor of the nonmoving party only when the facts specifically

13   attested by that party contradict facts specifically attested by the moving party. The

14   nonmoving party may not merely state that it will discredit the moving party's evidence

15   at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W.*

16   *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

17   nonspecific statements in affidavits are not sufficient, and missing facts will not be

18   presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

19   **B.    Merits**

20           As a preliminary matter, the Court will only be addressing Ethicon's supplemental

21   motion for summary judgment. As directed in the Transfer Order from the Southern

22   District of West Virginia, "it is the parties' responsibility to follow the receiving court's

procedure for identifying any individual motions that remain pending and in need of

ruling." Dkt. 51. Neither party has moved for the Court to renote any motions pending in

the MDL consistent with the transfer order. The Court declines to review the initial

motion for summary judgment *sua sponte*. The Court does note that Ethicon's

supplemental motion for summary judgment on Plaintiffs' claim Discovery Rule and

Tolling (Count XVIII) is unopposed.[1] The Court therefore grants Ethicon's motion as to

Count XVIII and will review the arguments only found in the supplemental motion for

summary judgment.

### 1.      Statute of Limitations

In its supplemental motion for summary judgment, Ethicon argues for the first

time that Plaintiffs' claims are time-barred. Dkt. 76. The Washington Products Liability

Act ("WPLA") governs all claims for product-related harm in Washington.[2] RCW

7.72.010(4). Under the WPLA, a claim must be brought within "three years from the time

the claimant discovered or in the exercise of due diligence should have discovered the

harm and its cause." RCW 7.72.060(3). It does not appear that the parties dispute whether

the WPLA's statute of limitations apply to Plaintiffs' claims, rather the parties disagree

over when Plaintiffs' claims accrued and when the statute of limitations began to run.

---

[1] Ethicon argues that its supplemental motion for summary judgment for Plaintiffs' Punitive Damages claim is unopposed, *see* Dkt. 80, but Plaintiffs have not brought a claim for Punitive Damages, *see* Dkt. 1 at 5.

[2] The WPLA is the exclusive remedy for product liability claims. *Potter v. Wash. State Patrol*, 165 Wn.2d 67, 87 (2008). The WPLA supplants all common law claims or actions based on harm caused by a product. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisosn Corp.*, 122 Wn.2d 299, 323. Without ruling on the WPLA's preemption, the Court assumes without finding that the WPLA's statute of limitations controls whether Plaintiffs' claims are time barred.

1     A statute of limitations begins to run when the underlying claim accrues—that is

2     when a party has discovered or should have discovered the facts to support a cause of

3     action. *Green v. A.P.C.*, 136 Wn.2d 87, 95 (1998). Washington requires "that when a

4     plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful

5     conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the

6     actual harm." *Id.* at 96. To that end, Washington courts have held that "one who has

7     notice of facts sufficient to put him upon inquiry is deemed to have notice of all acts

8     which reasonable inquiry would disclose." *Id.* (quoting *Hawkes v. Hoffman*, 56 Wash.

9     120, 126 (1909)). But the question of when a plaintiff should have discovered the facts to

10    support a cause of action so as to trigger the statute of limitations is ordinarily a question

11    of fact. *Id.* at 100; *see also Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*, 123

12    Wn.2d 15, 34–35 (1993); *Honcoop v. State*, 111 Wn.2d 182, 194 (1988). The defendant

13    bears the initial burden of showing the absence of an issue of material fact. *Green*, 136

14    Wn.2d at 100; *Young v. Key Pharms. Inc.*, 112 Wn.2d 216, 225 (1989).

15    Here, Ethicon argues that, because Mrs. March testified that she began

16    experiencing her symptoms immediately after her March 2008 implant and because she

17    "immediately" attributed her symptoms to her TVT-O, Plaintiffs' claims accrued and the

18    statute of limitations began to run no later than 2009. Dkt. 78. Ethicon asserts that Mrs.

19    March was placed on inquiry notice to investigate the causes of her pain further because

20    she was suspicious of a correlation between her symptoms and her TVT-O. Specifically

21    Ethicon argues that Mrs. March was on inquiry notice because on January 12, 2009 Dr.

22    Vogelgesang referred her to a urologist about possible erosion of the mesh into her

1   bladder. Therefore, according to Ethicon, Plaintiffs' claims accrued at least when Mrs.

2   March suspected that her symptoms were attributable to her TVT-O implant but no later

3   than in 2009 when Mrs. March was referred to a urologist for the possible mesh erosion.

4   Because Plaintiffs did not file suit until 2013, Ethicon argues that their claims are time

5   barred by the three-year statute of limitations.

6       But Ethicon fails to address whether Mrs. March would have actually discovered

7   that she had a defective product in 2009. Inquiry notice holds that "one who has notice of

8   facts sufficient to put him upon inquiry is deemed to have notice of all acts which

9   reasonable inquiry would disclose." *Green*, 136 Wn.2d at 96 (internal quotation omitted).

10  Even if Mrs. March went to the urologist in 2009 as recommended by Dr. Vogelgesang,

11  the record is silent as to whether a reasonable inquiry with a urologist would have

12  disclosed issues with her TVT-O or a defective TVT-O. The Court therefore may not

13  reasonably find that Mrs. March was on inquiry notice about her TVT-O issues when

14  there is lacking evidence about what she would have discovered upon inquiry.

15      Plaintiffs, additionally, argue that the discovery rule found in *North Coast Air*

16  *Services, Ltd. v. Grumman Corp.*, 111 Wn.2d 315 (1988), is applicable to this case, and

17  under the principles of *North Coast Air* their claims are not time barred. Dkt. 78 at 4. In

18  *North Coast Air*, a pilot died in a plane crash, and the initial investigation attributed the

19  cause to the pilot's error and concluded that the plane had no mechanical defects. 111

20  Wn.2d at 317. The plaintiff—the pilot's father—learned eleven years later that the crash

21  was a result of a defect in the plane only after hearing reports of similar crashes. *Id.* at

22  317–18. The plaintiff subsequently filed suit for products liability claims, and the

1    defendant moved to dismiss the claims, arguing that they were time barred. *Id.* at 318–19.

2    The Washington Supreme Court therefore addressed whether the statute of limitations for

3    a products liability case begins to run when the harm is or should have been discovered or

4    whether "is it a question for the trier of fact to determine when 'in the exercise of due

5    diligence' the product's relationship to the injury should have been discovered, with the

6    statute of limitations running from that date." 111 Wn.2d at 317. The court rejected the

7    defendant's argument that a claim accrues when the claimant knew or should have known

8    the immediately apparent basis for the harm, *id.* at 322–23, and rather held that the statute

9    of limitations begins to run when the claimant discovered, or should have discovered,

10   factual causal relationship between the alleged defective product and harm, *id.* at 319.

11   Importantly, the Washington Supreme Court held that whether the plaintiff in the case

12   knew or should have known about the cause of harm was an unresolved question of fact.

13   *Id.* at 318.

14        Plaintiffs assert that Mrs. March knew of some injury immediately after her TVT-

15   O implant surgery, but that she did not suspect that the product was defective until 2013.

16   She argues that she was told by her physicians to learn how to deal with the pain and that

17   her healthcare providers did not suspect a defective TVT-O product. Pursuant to *North*

18   *Coast Air*, Plaintiffs argue that there is a question of fact as to whether Mrs. March

19   should have discovered the factual causation relationship between the TVT-O and her

20   harm. Ethicon, however, rebuts Plaintiffs' reliance on *North Coast Air*, arguing that the

21   authority does not deviate from the inquiry notice standard. Unlike the plaintiffs in *North*

22   *Coast Air*, Ethicon charges Mrs. March with being not diligent and asserts that she should

1    have discovered the causal relationship between the device and her harm. Ethicon argues

2    that Mrs. March was on notice of some product defect because of her "immediate" pain

3    and symptoms and because Dr. Vogelgesang referred her to a urologist about possible

4    mesh erosion in 2009.

5         Yet the Washington Supreme Court held in *North Coast Air* whether the plaintiff

6    knew or should have known about the cause of harm was a question of fact. 111 Wn.2d at

7    328. Even if Mrs. March "immediately" experienced injuries following the TVT-O

8    implant and "immediately" attributed her injuries to the TVT-O, questions of fact remain

9    as to the extent of her suspicion and whether she would have discovered the underlying

10   cause of her harm upon inquiry. The Court agrees with Plaintiffs that numerous questions

11   of fact exist here as to whether Mrs. March should have discovered the TVT-O

12   deficiencies prior to 2013 and finds that the evidence is lacking as to what Mrs. March

13   would have discovered upon inquiry prior to 2013.[3] The Court therefore declines to hold

14   as a matter of law that Mrs. March should have been diligent and discovered the cause of

15   her harm. It remains a question of fact whether the statute of limitations has run on

16   Plaintiffs' claims.

17        Ethicon alternatively argues that Plaintiffs' breach of warranty claims (Counts XI

18   and XII) should be dismissed even if the breach of warranty claims were not subsumed

19   by the WPLA's statute of limitations. Dkt. 76 at 6. A breach of warranty action must be

20

21        [3] Specifically, Ethicon fails to provide evidence of what was known about these types of
     medical implants within the medical community at the time when Mrs. March was referred to a
22   urologist.

1   brought within four years after the cause of action has accrued. RCW 62A.2-725(1). The

2   cause of action in a breach of warranty cause "accrues when the breach occurs, regardless

3   of the aggrieved party's lack of knowledge of the breach, and "[a] breach of warranty

4   occurs when tender of delivery is made" unless a warranty of future performance is

5   made. RCW 62A.2-725(2). Plaintiffs did not address whether their breach of warranty

6   claims are time-barred in their response, and Ethicon's motion is therefore unopposed as

7   to this matter. The Court thus grants summary judgment as to Counts XI and XII and

8   denies summary judgment as to the remaining claims.

9         **2.    Failure to Warn**

10          In the alternative, Ethicon argues that summary judgment is warranted for

11  Plaintiffs' failure to warn claim because they cannot establish causation. To prevail on a

12  failure to warn claim, a plaintiff must show that (1) the defendant failed to sufficiently

13  warn, (2) the plaintiff suffered damages, and (3) the defendant's failure to sufficiently

14  warn of the dangers was a proximate cause of the plaintiff's damages. *See, e.g.*, *Little v*

15  *PPG Industries, Inc.*, 19 Wn. App. 812, 818 n.3 (1978) (approving the Restatement of

16  Torts' recitation of the elements). However, in the context of medical failure to warn

17  claims, the duty of the manufacturer to warn is satisfied if the manufacturer gives

18  adequate warning to the physician who prescribes or implants the product. *Terhune v.*

19  *A.H. Robins Co.*, 90 Wn.2d 9, 13 (1978).

20          Ethicon argues that Plaintiffs cannot establish causation because Plaintiffs cannot

21  provide Mrs. March's implanting physician's testimony. Ethicon asserts that such

22  testimony is required, citing other mesh cases following transfer from the MDL Court.

*See, e.g.*, *Heide v. Ethicon Inc.*, No. 4:20CV160, 2020 WL 1322835, at *5–6 (E.D. Ohio March 20, 2020) (granting summary judgment on the plaintiff's failure to warn claims because she lacked sufficient evidence of causation without the testimony from her implanting physician). Even so, district courts around the country have held that the implanting physician's testimony is helpful, but not necessarily required, to establish causation.

Here, in order to prove causation, Mrs. March must show that her implanting physician was aware of the alleged inadequate warning made by Ethicon. *See Cutter v. Ethicon, Inc.*, No. 5:19-443-DCR, 2020 WL 109809, at *8 (E.D. Ky. Jan. 9. 2020) ("Dr. Guiler testified that he did not consult these materials to obtain information about the risks of implanting the Prolift device in Jenesta and, in fact, has never relied on them for such information."). She must also show that her physician would have acted differently had he been given an adequate warning. *See Contreras v. Bos. Sci. Corp.*, No. 2:12-cv-03745, 2016 WL 1436682, at *4 (S.D.W. Va. Apr. 11, 2016) ("Here, the plaintiffs have not provided any citations to the record showing that Dr. Baker, the implanting physician, would have taken a different course of action even if she had been given an adequate warning."); *Fulgenzi v. PLIVA*, 140 F. Supp. 3d 637, 648 (N.D. Ohio 2015) ("The undisputed facts in the record establish that plaintiff's physicians did not ever read, let alone rely on, PLIVA's inadequate 2004 warning."); *Higgins v. Ethicon, Inc.*, No. 2:12-cv-01365, 2017 WL 2813144, at *3 (S.D.W. Va. Mar. 30, 2017) (granting summary judgment on a Texas law failure to warn claim because "[t]he plaintiffs have failed to

1    present any testimonial or other evidence that Dr. Anhalt would not have used or

2    prescribed the TVT-S to treat Ms. Higgins had he received a different warning.").

3            Mrs. March's implanting physician, Dr. John Farrer, passed away on April 18,

4    2015 prior to being deposed in this case. Dkt. 79-4, Declaration of Penny Farrer ("Farrer

5    Decl."), at 2. In lieu of Dr. Farrer's testimony, Plaintiffs submit the declaration of Dr.

6    Farrer's wife and longtime nurse, Penny Farrer ("Mrs. Farrer"), who assisted him in

7    procedures such as Mrs. March's TVT-O implant. *See id.* Mrs. Farrer declares that it was

8    Dr. Farrer's "practice to pass on any information concerning the risks or complications to

9    his patients so that a patient could make an informed decision." *Id.* She further declares

10   that Dr. Farrer "was careful in choosing products such as mesh slings" and would not use

11   certain products "in his treatment of patients because he believed the product was not

12   safe." *Id.* Distinguishing their facts from the MDL cases Ethicon relies on, Plaintiffs

13   assert that they have presented evidence that "Dr. Farrer read product warnings, that he

14   would have decided not to use a product he felt was unsafe, and that he would inform his

15   patients of additional warnings" and that this evidence is sufficient at this stage. Dkt. 78

16   at 11.

17           Ethicon argues that Mrs. Farrer's declaration is speculative as to what Dr. Farrer

18   may or may not have done and that the Court should therefore disregard the declaration.

19   Dkt. 80 at 10–11. Ethicon relies on *Knutson v. Daily Review, Inc.*, 548 F.2d 795 (9th Cir.

20   1976), to support its argument that it is improper to speculate on what Dr. Farrer may or

21   may not have done. In *Knutson*, the Ninth Circuit confronted issues in calculating

22   damages in antitrust cases, *id.* at 810–13, and held that determining what a dealer would

have done during the alleged price fixing scheme involved speculation, *id.* at 12. Rather

than speculate, the Ninth Circuit held that courts assume, absent evidence to the contrary,

a dealer would raise prices and profit maximize. *Id.* It is unclear to the Court how

*Knutson* is determinative on the issue of whether the Court should consider Mrs. Farrer's

declaration in ruling on the instant motion for summary judgment. Ethicon has not carried

its burden at this stage to establish as a matter of law that the type of causation evidence

that Plaintiffs submit is inadmissible. The Court therefore denies Ethicon's motion as to

Plaintiffs' failure to warn claims, but any issues regarding Mrs. Farrer's testimony may

be addressed in a fully briefed motion in limine or at trial.

### 3.    Loss of Consortium

Finally, Ethicon moves for summary judgment on Plaintiffs' loss of consortium

claim. Loss of consortium is typically thought of as a "loss of society, affection,

assistance and conjugal fellowship, and . . . loss or impairment of sexual relations" in the

marital relationship. *Ueland v. Pengo Hydra-Pull Corp.*, 103 Wn.2d 131, 132 n.1 (1984)

(citing *Black's Law Dictionary* 280 (5th ed. 1979)). In Washington, a loss of consortium

claim is a separate and independent claim rather than a derivative claim. *Green*, 136

Wn.2d at 101. A loss of consortium claim accrues when the spouse first experiences

injury due to loss of consortium. *Reichelt v. Johns-Manville Corp.*, 107 Wn.2d 761, 776

(1987).

Ethicon argues that, because Mrs. March testified that she began having sexual

problems soon after her TVT-O was implanted, Mr. March first experienced his injury

due to loss of consortium in 2008. Dkt. 76 at 7–8. Plaintiffs, on the other hand, argue that

the injury is the defective mesh and that Mr. March did not experience an injury until Mr. and Mrs. March learned of the TVT-O's defects. Dkt. 7 at 12. Ethicon relies on Mrs. March's testimony as to when *she* began to experience sexual problems, and Mr. March declares that he was unaware of any defects in the mesh product until 2013. Dkt. 79-2, Declaration of Edgar March. There is a dispute of fact as to when Mr. March himself began to experience injuries due to loss of consortium. The Court therefore denies Ethicon's motion for summary judgment as to Plaintiffs' loss of consortium claim.

## IV.  ORDER

Therefore, it is hereby **ORDERED** that Ethicon's motion for summary judgment, Dkt. 76, is **GRANTED** in part and **DENIED** in part. Plaintiffs' Breach of Express Warranty (Count XI), Breach of Implied Warranty (Count XII), and Discovery Rule and Tolling (Count XVIII) claims are dismissed with prejudice

Dated this 19th day of October, 2020.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 15